## APPEAL OF NATIONAL CASKET CO.

Docket No. 1468.   Submitted October 26, 1925.   Decided February 19, 1926.

> *Held*, under the evidence, that invested capital can not be determined and that the tax should be computed under section 210 of the Revenue Act of 1917 and section 328 of the Revenue Act of 1918.

*Richard T. Greene* and *James L. Dohr, Esqs.*, for the taxpayer.
*Ward Loveless, Esq.*, for the Commissioner.

Before TRAMMELL and LOVE.

This is an appeal from the determination of a deficiency in income and profits taxes for the fiscal year ended June 30, 1918, in the sum of $85,861.72. The deficiency arose from the action of the Commissioner in eliminating from invested capital certain value attributed to intangibles.

FINDINGS OF FACT.

1. The taxpayer is a New York corporation, organized in the year 1890 with a capital stock of $3,000,000, divided into 30,000 shares of a par value of $100 each. The taxpayer was organized for the purpose of taking over the business of three corporations, to wit, the Stein Manufacturing Co., the Hamilton, Lemmon, Arnold Co., and the Chappel, Chase, Maxwell Co. Of the total capital stock, $1,500,000 was issued for tangible assets, consisting of the buildings, land, machinery and equipment and cash of the three corporations. Each of the said corporations transferred tangible assets of the value of $500,000, for which each received $500,000 in stock. The value of the tangible assets was ascertained by a joint committee, which carefully appraised the property. In case the tangible assets lacked the value of $500,000, cash was contributed to make up the difference. The Stein Manufacturing Co. contributed approximately $100,000 in cash to make up this difference in tangible assets. In addition to the $1,500,000 stock issued for tangible assets, $1,500,000 in stock was issued for the intangible assets, consisting of good will, patents, licenses, etc., $500,000 being issued to each company. The three corporations at the time of the consolidation were the three leading manufacturers and sellers of caskets in the United States and were competitors in the same territory. The organization of the taxpayer

was the culmination of numerous negotiations and conferences at arm's length.

2. The Stein Manufacturing Co. was located at Rochester, N. Y. Its specialty was the manufacture and sale of cloth-covered caskets.

It had valuable patents on casket lids and metal linings for caskets. Its market embraced all the territory east of the Mississippi River. It had been a profitable going concern for over 15 years. Its net earnings for the period immediately preceding 1890 were as follows:

| | |
|---|---:|
| 1886 | $66,963.00 |
| 1887 | 78,187.91 |
| 1888 | 54,474.90 |
| 1889 | 46,539.03 |
| Total | 246,164.84 |
| Average | 61,541.21 |

The Hamilton, Lemmon, Arnold Co. was located at Pittsburgh and its market also embraced all the territory east of the Mississippi River. This concern had also operated successfully for over 15 years. Its product consisted principally of varnished caskets of the more expensive types. The earnings for the period immediately preceding 1890 were as follows:

| | |
|---|---:|
| 1886 | $41,027.32 |
| 1887 | 68,883.83 |
| 1888 | 61,952.88 |
| 1889 | 76,521.37 |
| Total | 248,385.40 |
| Average | 62,096.35 |

The Chappel, Chase, Maxwell Co. was located at Oneida, N. Y. It was larger and more aggressive than the other two. Its specialty was service to its customers. No books were available to show the earnings for the four years immediately preceding 1890, nor was there any other competent evidence thereof.

All three of these concerns had an established line of customers, consisting of undertakers and jobbers in all parts of the United States east of the Mississippi River. They also had branch houses and maintained a force of salesmen to market their products. They were recognized throughout the trade as the three leading casket manufacturers.

3. The taxpayer, after its organization, took over the factories, inventories, personnel, and all the business of the said corporations and continued successfully to operate the combined business. By means of the merger the taxpayer was able to effect many economies, such as

the elimination of duplication of branch houses, sales force, and the manufacture of the same type of caskets in the various factories. Special lines were assigned to each factory. The taxpayer was financially successful from the start and has continued so to the present time. The organizers of the taxpayer, in fixing the capitalization at $3,000,000, anticipated and expected from the data at their disposal that substantial dividends could be paid on such capitalization. The taxpayer, ever since its organization, has always paid annual dividends. The net profits for the four years immediately following its organization in 1890 were as follows:

| | |
|---|---:|
| Year ended June 30, 1891 | $191, 034. 05 |
| Year ended June 30, 1892 | 208, 678. 97 |
| Year ended June 30, 1893 | 222, 965. 47 |
| Year ended June 30, 1894 | 173, 688. 77 |
| Year ended June 30, 1895 | 204, 495. 33 |
| Total | 1, 000, 862. 59 |
| Average | 200, 172. 52 |

4. The taxpayer claims that the good will acquired by the issuance of $1,500,000 of stock in 1890 had a value of $1,500,000. The Commissioner refused to allow any value for intangibles in computing invested capital.

### DECISION.

The deficiency should be computed in accordance with the following opinion. Final determination will be made upon 15 days' notice, in accordance with Rule 50.

### OPINION.

TRAMMELL: While the evidence convinces us that the taxpayer acquired valuable intangible assets for stock, it is wholly insufficient to enable us to make a finding as to what the value thereof was. Good will acquired for stock, subject to the statutory limitation, is properly a part of invested capital, but that part can not be determined, since we can not determine the value of the intangibles.

The taxpayer alleged in its petition that, if the Board did not allow it to include in its invested capital the value of intangibles, it would be entitled to have its taxes computed under section 210 of the Revenue Act of 1917 and section 328 of the Revenue Act of 1918, and that evidence as to the two corporations which it claimed should be used as comparatives.

From the evidence introduced as to comparative corporations, we are not convinced that the corporations offered as comparatives were similarly situated, within the meaning of the statute.

The case is therefore referred to the Commisisoner for a redetermination of the deficiency, if any, by computing the tax under the provisions of section 210 of the 1917 Act and section 328 of the 1918

Act by the use of proper comparatives, the determination of the tax liability by the use of such comparatives to be final.

On reference to the Board, James did not participate.